D. Maimon Kirschenbaum
Josef Nussbaum
Lucas C. Buzzard
Joseph & Kirschenbaum LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ANGEL ORTEGA and JORGE NAVARRO, on
behalf of themselves and other similarly situated
individuals,

                Plaintiffs,

        v.

TRIDENT RESTORATION, INC., TRI
CONTRACTING, INC., UKROP, INC., FINE
RESTORATION, INC., REVIVE
RESTORATION, INC., SWIFT ASSIST, INC.,
PG1 CONSTRUCTION, INC., CROWN
RESTORATION, INC., RSO MANAGEMENT,
INC., 558 MAIN STREET, LLC, 115 ABEEL
STREET, LLC, 2165 23RD STREET LLC, TRI
BUILDERS, INC., TRITON RENOVATION
CORP., TRIDENT RENOVATION &
ASSOCIATES, INC., TRIDENT MGMT RE
LLC, 64-66 CATHERINE STREET CORP.,
BROOKLYN BUILDING SUPPLY, INC., TRI
CONTRACTING, INC., CVP CONSTRUCTION
CORP., JMS MICH LLC, STEFAN
BOHDANOWYCZ, PETER GOIAN, and
VLADIMER DOBRONRAVOV,

                Defendants.
------------------------------------------------------------x

**COLLECTIVE/CLASS ACTION COMPLAINT**

      1.      Plaintiffs Angel Ortega and Jorge Navarro, on behalf of themselves and all other

similarly situated employees, by and through his undersigned counsel, alleges:

## JURISDICTION AND VENUE

2. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). Under 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the New York state law claims, as they are so related to the federal claims over which the Court has original jurisdiction that the state law claims form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to claims of this Complaint took place in this District, several of the Defendants have offices in this District, and Plaintiffs performed work for Defendants in this District.

## THE PARTIES

4. Defendants Trident Restoration, Inc., Tri Contracting, Inc., Ukrop, Inc., Fine Restoration, Inc., Revive Restoration, Inc., Swift Assist, Inc., PG1 Construction, Inc., Crown Restoration, Inc., RSO Management, Inc. 558 Main Street LLC, 115 Abeel Street LLC, 2165 23rd Street LLC, Tri Builders, Inc., Triton Renovation Corp., Trident Renovation & Associates, Inc., Trident MGMT RE LLC, 64-66 Catherine Street Corp., Brooklyn Building Supply, Inc., Tri Contracting, Inc., CVP Construction Corp., 1st Class Contracting of LI Corp., and JMS Misch LLC (the "Defendant Entities") are all corporations or companies organized and existing under the laws of New York.

5. Upon information and belief, the annual dollar volume of gross revenue each year of the Defendant Entities exceeds $500,000 and each is an enterprise engaged in commerce within

the meaning of 29 U.S.C. 201, *et. seq.*

6. The Defendant Entities perform construction, repair, and renovation services for townhomes, buildings, and apartments throughout New York City and New York State.

7. Defendant Stefan Bohdanowycz is the president of Defendants Trident Restoration, Inc. and Tri Contracting, Inc.

8. Defendants Trident Restoration, Inc. and Tri Contracting, Inc. are collectively referred to herein as "Trident."

9. Trident is a general contractor that facilitates the construction and/or renovation of properties around New York City and New York State by obtaining necessary licenses and building permits, advising owners and architects on costs, and providing the manual labor – including Plaintiffs and members of the class/collective – for construction/renovation projects.

10. Trident oversees and controls the work performed on each of its construction projects, and is responsible for setting the wages for and paying the wages to the manual laborers on those projects, including Plaintiffs and members of the class/collective.

11. Defendant Peter Goian is the general manager of Trident.

12. Defendant Vladimir Dobronaravov is the purchase manager of Trident

13. The Defendant Entities operate as a single, integrated enterprise.

14. Upon information and belief, Defendant Stefan Bohdanowycz is an owner and/or member of each of the Defendant Entities.

15. For example, Defendant Stefan Bohdanowycz is listed as the relevant contact person on New York's Department of State, Division of Corporations website for Defendants RSO Management, Inc., 558 Main Street LLC, 115 Abeel Street LLC, 2165 23rd Street LLC, Tri Builders, Inc., Trident MGMT RE LLC, and Brooklyn Building Supply, Inc.

16. Defendant Bohdanowycz is listed as a member of Defendant JMS Rite Aid PH LLC on that entity's filing with the Vermont Secretary of State.

17. Other management employes of Trident are owners and/or members of other Defendant Entities.

18. For example, Defendant Dobronravov is listed as the relevant contact person on New York's Department of State, Division of Corporations website for Defendant Fine Restoration, Inc.

19. Defendant Goian is listed as the relevant contact person on New York's Department of State, Division of Corporations website for Defendant PG1 Construction, Inc.

20. Sergiy Angelyniauk, Trident's office administrator, is listed as the relevant contact person on New York's Department of State, Division of Corporations website for Defendants Revive Restoration, Inc. and Swift Assist Inc.

21. Igor Kuzenov, a project manager of Trident, is listed as the relevant contact person on New York's Department of State, Division of Corporations website for Defendant Crown Restoration, Inc.

22. Olexander Verbovy, another project manager of Trident, is listed as the relevant contact person on New York's Department of State, Division of Corporations website for Defendant Ukrop, Inc.

23. Plaintiff Angel Ortega has been employed by Defendants as a carpenter from 2014 to the present.

24. Plaintiff Jorge Navarro has been employed by Defendants as a carpenter from approximately 2014 to January 2023.

25. Plaintiffs and other class/collective action members performed manual labor and

construction work for Defendants (including, *inter alia*, carpentry, demolition, painting, and masonry) at various job sites across New York City and other parts of the State of New York.

26. Plaintiffs and other class/collective action members were paid for the work performed on those job sites by one or more of the Defendant Entities.

27. For example, Plaintiff Ortega received paychecks form Defendants Crown Restoration, Inc. and Ukrop, Inc., among other Defendant Entities.

28. Plaintiff Navarro received paychecks from Defendant CVP Construction Corp. among other Defendant Entities.

29. Other members of the putative class/collective who are similarly situated to Plaintiffs and to whom Plaintiffs have discussed the matter received paychecks from Defendants Crown Restoration, Inc., Triton Renovation Corp., 1st Class Contracting of LI Corp., PG1 Construction, Inc., CVP Construction Corp., Fine Renovation, Inc., Revive Restoration, Inc., Swift Assist, Inc., and Trident Restoration, Inc. These members of the class/collective include Jose Cruz, Mario Hernandez, Ricardo Martinez, Eliud Rivera, Osman Servellon, and Wenceslao Urena.

30. Despite receiving paychecks from various Defendant Entities, Trident and the Individual Defendants at all relevant times exercised comprehensive control over Plaintiffs and the other class/collective action members' employment, including by controlling the manner of their duties, hours of work and compensation, supervising their employment, and having authority to hire and fire them.

31. No matter which Defendant Entity issued Plaintiffs their paycheck, the work permits on each job on which Plaintiffs worked were issued to Defendant Bohdanowycz and listed the relevant business as either Tri Contracting, Inc. or Trident Restoration, Inc.

32. No matter which Defendant Entity issued Plaintiffs their paycheck, the work

5

vehicles used on the job site were labelled with the name of Trident Restoration, Inc.

33. Defendants Bohdanowycz, Goian, and Dobronravov at all times participated in the day-to-day operations of Trident and the Defendant Entities, and acted intentionally and maliciously as "employers" pursuant to the FLSA, 29 U.S.A §203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as under New York Labor Law § 2 and the Regulations thereunder, and they are jointly and severally liable with Trident and the Defendant Entities for the acts and omissions set forth herein.

34. Defendants Bohdanowycz, Goian, and Dobronravov are in active control and management of Trident's day to day operations, hire, fire and exercise comprehensive control over the Plaintiff's and the other collective/classs action members' employment, direct the work of employees, set schedules, weekly hours of work, wage rates, and are an employers of Plaintiff and those similarly situated under the FLSA and NYLL.

35. No matter which Defendant Entity issued Plaintiffs their paycheck, if Plaintiffs had questions about their pay, they were required to speak with Defendants Dobronarov or Goian.

36. For example, when Plaintiffs did not receive paychecks for several weeks in December 2022/January 2023, they raised a complaint with Defendant Goian, who promised that they would be paid the Monday following their complaint.

37. No matter which Defendant Entity issued Plaintiffs their paycheck, the paychecks themselves were distributed to Plaintiffs and other class/collective members by Defendant Dobronarov.

38. Defendant Dobronarov often told Plaintiffs and other class/collecting members when issuing their paychecks that they could not deposit them right away because the funds were not yet in the relevant Defendant Entity's account.

39. Plaintiffs would then text Defendant Dobronarov to inquire whether they could deposit their checks.

40. If Plaintiffs and other class/collective members deposited their paychecks before being told to do so by Defendant Dobronarov, the checks would bounce and the employees would have to contact Defendant Dobronarov to be reissued their check.

41. No matter which Defendant Entity issued Plaintiffs their paycheck, Defendant Goian was responsible for recording and checking the hours worked by Plaintiffs and other members of the class/collective.

42. Defendant Goian had and exercised the authority to hire, fire, and discipline Plaintiffs and other members of the class/collective.

43. For example, Defendant Goian hired Plaintiff Navarro.

44. Plaintiff Navarro witnessed Defendant Goian hire other construction workers and/or direct foremen on job sites to hire new workers.

45. Defendant Bohdanowycz had and exercised the authority to hire, fire, and affect the pay received by Plaintiffs and the other members of the class/collective.

46. Defendant Bohdnaowycz was frequently present on job sites and, when present, issued orders to construction workers and foremen.

47. For example, when Plaintiff Ortega asked a Trident foreman about the possibility of receiving a raise, the foreman told him that he would have to speak with Defendant Bohdanowycz.

## FLSA COLLECTIVE ACTION ALLEGATIONS

48. Plaintiffs bring the First Claim for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all construction workers (including but not limited

to helpers, carpenters, masons, and painters) employed by Defendants and paid a flat daily rate within three years before the filing of this complaint, or such prior date as set by the Court due to the equitable tolling of claims ("FLSA Collective Plaintiffs").

49. At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' decisions, plans, common policies, programs, practices, procedures, protocols and rules of willfully failing and refusing to (1) pay them for all hours worked, and (2) pay them at least one-and-one-half times their regular hourly rate of pay for work in excess of forty (40) hours per workweek.  The claims of Plaintiffs stated herein are the same as those of the other FLSA Collective Plaintiffs.

50. At all relevant times, Defendants have been, and continue to be, "employers" engaged in "commerce" within the meaning of FLSA, 29 U.S.C. § 201, *et. seq*.

51. At all relevant times, Defendants have employed "employee[s]", within the meaning of the FLSA, including Plaintiffs and each of the FLSA Collective Plaintiffs.

## NYLL CLASS ACTION ALLEGATIONS

52. Plaintiffs bring the Third, Fourth, Fifth, and Sixth Claims for Relief as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the "NYLL Class," defined as all construction workers (including but not limited to helpers, carpenters, masons, and painters) employed by Defendants and paid a flat daily rate on or after the date that is six years before the filing of the Complaint in this case as defined herein.

53. Plaintiffs and the NYLL Class have been subjected to systemic, common employment practices including, but are not limited to: (a) failing to pay at least the New York minimum wage for all hours worked; (b) failing to pay overtime wages for all hours worked in

excess of 40 per week; (c) failing to provide Plaintiffs and the NYLL Class with proper wage notices and wage statements as required by N.Y. Lab. Law § 195(1) and (3); and (d) failing to pay Plaintiffs and NYLL Class Members on a timely basis as required by N.Y. Lab. Law 191(1)(a).

54. The members of the NYLL Class are readily ascertainable. The number and identity of the NYLL Class Members are determinable from Defendants' records. The positions held and the rates of pay for each NYLL Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this Action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

55. The proposed NYLL Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of NYLL Class Members is currently unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than 300 members of the Class.

56. Plaintiffs' claims are typical of those claims which could be alleged by any member of the NYLL Class, and the relief sought is typical of the relief which would be sought by each member of the NYLL Class in separate actions. All the NYLL Class Members, including Plaintiffs, were subject to the same systemic corporate practices of Defendants, as alleged herein, of failing to failing to pay at least the New York minimum wage for all hours worked, failing to pay overtime wages for all hours worked in excess of 40 per week, failing to provide proper wage notices and wage statements as required by N.Y. Lab. Law § 195(1) and (3), and failing to pay wages on a timely basis as required by N.Y. Lab. Law 191(1)(a). Defendants' policies and practices affected all NYLL Class Members similarly, and Defendants benefited from the same

type of unfair and/or wrongful acts as to each NYLL Class Member. Plaintiffs and other NYLL Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

57. Plaintiffs are able to fairly and adequately protect the interests of the NYLL Class and have no interests antagonistic to the NYLL Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment discrimination litigation, and who possess the experience and resources to litigate an employment discrimination class action of this size and complexity.

58. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage discrimination litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against Defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual NYLL Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of

conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

59. There are questions of law and fact common to the NYLL Class which predominate over any questions affecting only individual class members, including:

(a) Whether Defendants unlawfully failed and continue to fail to pay NYLL Class Members at least the minimum wage for all hours worked;

(b) Whether Defendants unlawfully failed and continue to fail to pay NYLL Class Members overtime wages;

(c) Whether Defendants failed to provide NYLL Class Members with proper wage notices and wage statements as required by N.Y. Lab. Law 195(1) and (3);

(d) Whether Defendants failed to timely pay NYLL Class Members' wages on a timely basis as required by N.Y. Lab. Law 191(1)(a); and

(e) Whether Defendants' failure to compensate NYLL Class Members for all hours worked and pay required overtime wages was willful within the meaning of the NYLL.

60. A class action is superior to other available means for fairly and efficiently adjudicating the claims of the Plaintiffs and members of the NYLL Class.

## FACTS

61. Plaintiffs' Consent to Sue forms are attached as Exhibits A and B.

62. Plaintiffs were Defendants' employees.

63. At all times hereinafter mentioned, Plaintiffs were required to be paid at least the statutory minimum wage for all hours worked and overtime pay at the statutory rate of time and one-half times their regular hourly rate for hours worked over forty (40) hours in a workweek.

64. However, Plaintiffs were paid a flat day rate.

65. Specifically, Plaintiffs worked between 5 and 6 days each week.

66. Until approximately mid-2020, Plaintiffs' shifts spanned from 7:30 a.m. until at least 5:30 p.m.

67. Thus, until approximately mid-2020 Plaintiffs worked at least 50 to 60 hours each week.

68. During this time, Defendants paid Plaintiffs a flat daily rate for each day worked, with no overtime premium for those hours worked in excess of 40 per week.

69. These flat daily rates paid to Plaintiffs started at approximately $150 per day and then gradually increased to approximately $200 per day by mid-2020.

70. Beginning in mid-2020, Plaintiffs' shifts spanned from 8:00 a.m. until at least 5:30 p.m.

71. After mid-2020, Plaintiffs were required to work additional hours and/or days during the summer months.

72. Thus, after approximately mid-2020, Plaintiffs worked at least 40 to 48 hours per week and generally worked at least 48 hours per week in the summer months.

73. During this time, Defendants paid Plaintiffs a flat daily rate for each day worked, with no overtime premium for those hours worked in excess of 40 per week.

74. These flat daily rates paid to Plaintiffs started at approximately $200 per day in mid-2020 and gradually increased to $216 per day for Plaintiff Ortega and $220 per day for Plaintiff Navarro.

75. Defendants on many occasions did not pay Plaintiffs any wages for the work they performed during a week. This occurred when Defendants either did not issue Plaintiffs paychecks at all or Plaintiffs' paychecks bounced when they attempted to deposit them and were not reissued

to Plaintiffs.

76. As of January 2023, Plaintiff Ortega was not paid at all for approximately seven weeks of work.

77. As of January 2023, Plaintiff Navarro was not paid at all for approximately seven weeks of work.

78. Defendants did not provide Plaintiffs with the wage statements required under NYLL § 195(3), *i.e.*, weekly pay stubs outlining the actual hours Plaintiffs worked and their hourly rates of pay or overtime rates.

79. Instead, the paychecks issued to Plaintiffs just listed their gross pay for the week, without any breakdown of hours worked. As a result of this, Plaintiffs did not have the information they needed to review whether they were paid for all of their hours worked in accordance with the law.

80. During the entirety of the time Plaintiffs were employed by Defendants, over twenty-five percent of their duties were physical tasks, including but not limited to: (1) carpentry; (2) physical demolition work; (3) physically preparing areas of job sites for construction work; and (4) unloading and carrying materials and tools needed for the construction work performed.

81. Defendants routinely failed to pay failed to pay Plaintiffs their wages earned within seven days of the end of the workweek, as required by NYLL § 191(1)(a).

82. This would occur on those occasions when Defendants did not have adequate funds in their accounts such that Plaintiffs either had to wait to deposit their paychecks or, if they deposited them too soon, have their paychecks bounce.

83. Every time that Defendants failed to pay Plaintiffs their wages earned within seven days of the end of the workweek, Defendants deprived Plaintiffs of the use of money that belonged

to them. As a result, Plaintiffs were on those occasions unable to do those things that every person does with their money, such as paying bills or buying goods that they needed or wanted to buy. Moreover, by retaining money that belonged to Plaintiffs, Defendants caused Plaintiffs to lose the time value of their money.

84. Defendants' violations against Plaintiffs, the FLSA Collective Plaintiffs, and the NYLL Class Plaintiffs have been willful in that Defendants recklessly disregarded the requirements of the law.

## FIRST CAUSE OF ACTION
### Minimum Wage Violations - Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*
### -On behalf of Plaintiffs and the FLSA Collective Plaintiffs-

85. Plaintiffs, on behalf of themselves and all FLSA Collective Plaintiffs, re-alleges and incorporates by reference the previous paragraphs as if they were set forth again herein.

86. Defendants committed the following alleged acts knowingly, intentionally and willfully.

87. Defendants have engaged in a policy and widespread practice of violating the FLSA, as detailed in this Complaint.

88. As plumbers and pipelayers, Plaintiff and the other FLSA Collective Plaintiffs regularly worked more than forty (40) hours per workweek.

89. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 207 et seq., and supporting federal regulations apply to Defendants and protect Plaintiffs and the FLSA Collective members.

90. At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiff and the other FLSA Collective Plaintiffs one-and-one-half times their regular rate for hours worked in excess of forty (40) per workweek.

91. Plaintiff, on behalf of himself and the other FLSA Collective Plaintiffs, seeks damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### Overtime Violations - Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*
### -On behalf of Plaintiffs and the FLSA Collective Plaintiffs-

92. Plaintiffs, on behalf of themselves and all FLSA Collective Plaintiffs, re-alleges and incorporates by reference the previous paragraphs as if they were set forth again herein.

93. Defendants committed the following alleged acts knowingly, intentionally and willfully.

94. Defendants have engaged in a policy and widespread practice of violating the FLSA, as detailed in this Complaint.

95. As plumbers and pipelayers, Plaintiffs and the other FLSA Collective Plaintiffs regularly worked more than forty (40) hours per workweek.

96. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 207 et seq., and supporting federal regulations apply to Defendants and protect Plaintiffs and the FLSA Collective members.

97. At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and the other FLSA Collective Plaintiffs one-and-one-half times their regular rate for hours worked in excess of forty (40) per workweek.

98. Plaintiffs, on behalf of themselves and the other FLSA Collective Plaintiffs, seek damages in the amount of their respective unpaid overtime compensation, liquidated (double)

damages as provided by the FLSA for overtime violations, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CAUSE OF ACTION
**Minimum Wage Violations, New York Labor Law § 650 *et seq.* and 12 NYCRR § 142-2.2**
**-On Behalf of Plaintiffs and the NYLL Class-**

99. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

100. Plaintiffs and members of the NYLL Class regularly worked hours for which they were not paid.

101. At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and members of the NYLL Class at least the statutory minimum wage for all hours worked.

102. Specifically, there were numerous occasions from 2016 to the present when Plaintiffs and members of the NYLL Class did not receive any weekly pay, either because Defendants did not issue paychecks or Defendants' paychecks were not able to be deposited.

103. At all relevant times, Defendants have operated under common policies, plans and practices of willfully failing to pay Plaintiffs and members of the NYLL Class at least the statutory minimum wage for all hours worked.

104. Plaintiffs, on behalf of themselves and the NYLL Class, seek damages in the amount of their respective unpaid minimum wage compensation, as well as, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### FOURTH CAUSE OF ACTION
**Overtime Violations, New York Labor Law § 650 *et seq.* and 12 NYCRR § 142-2.2**
**-On Behalf of Plaintiffs and the NYLL Class-**

105. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

106. Plaintiffs and members of the NYLL Class regularly worked in excess of 40 hours per workweek.

107. At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and members of the NYLL Class at least one-and-one-half times their regular rate for hours worked in excess of forty (40) per workweek.

108. At all relevant times, Defendants have operated under common policies, plans and practices of willfully failing to pay Plaintiffs and members of the NYLL Class at least one-and-one-half times their regular rate for hours worked in excess of forty (40) per workweek, and willfully failing to keep accurate records required by New York law, including 12 NYCRR § 142-2.6.

109. Plaintiffs, on behalf of themselves and the NYLL Class, seek damages in the amount of their respective unpaid overtime compensation, as well as, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**New York Notice Requirements, N.Y. Lab. L. §§ 195, 198**
**-On Behalf of Plaintiffs and the NYLL Class-**

110. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

111. Defendants did not provide Plaintiffs with the notices required by N.Y. Lab. Law §§ 195(1) and (3).

112. As a result of Defendants' unlawful conduct, Plaintiff is entitled to an award of

damages pursuant to N.Y. Lab. Law § 198, in amount to be determined at trial, pre- and post-judgment interest, and attorneys' fees and costs as provided for by N.Y. Lab. Law § 663.

## SIXTH CAUSE OF ACTION
### New York Labor Law § 191 – Failure to Pay Timely Wages
### -On behalf of Plaintiffs and the NYLL Class-

113. Plaintiffs realleges and incorporate by reference all allegations in all preceding paragraphs.

114. The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendants and protects Plaintiffs and the Class Members.

115. Defendants regularly failed to pay Plaintiff and Class Members on a timely basis as required by NYLL § 191(1)(a).

116. Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs claim:

    a.    Designation of this action as a collective action pursuant to the FLSA and prompt issuance of notice pursuant to 29 U.S.C. § 216(b);

    b.    Designation of Plaintiffs as Collective Action Representatives;

    c.    Designation of this action as a class action pursuant to Fed. R. Civ. P. 23;

    d.    Designation of Plaintiffs as Class Representatives;

    e.    Unpaid minimum and overtime wages under the FLSA and the NYLL;

    f.    Liquidated damages under the FLSA;

    g.    Liquidated damages under the NYLL;

  h.  Appropriate statutory penalties;

  i.  Restitution as provided by law;

  j.  Pre-Judgment and Post-Judgment interest, as provided by law;

  k.  Attorneys' fees and costs under the FLSA and the NYLL; and

  l.  Such other injunctive and equitable relief as the Court may deem just and proper.

Dated: March 6, 2023
   New York, NY

            Respectfully submitted,

            */s/       Lucas C. Buzzard*

            **JOSEPH & KIRSCHENBAUM LLP**
            D. Maimon Kirschenbaum
            Josef Nussbaum
            Lucas C. Buzzard
            32 Broadway Suite 601
            New York, NY 10004
            Telephone: (212) 688-5640
            Facsimile: (212) 688-2548

            *Attorneys for Plaintiffs and*
            *the Putative Collective/Class*