**JOSEPH & KIRSCHENBAUM LLP**
Attorneys at Law

| | |
|---|---|
| Charles Joseph | 32 Broadway, Suite 601 |
| D. Maimon Kirschenbaum | New York, NY 10004 |
| Denise Schulman | Phone (212) 688-5640 |
| Josef Nussbaum | Fax (212) 688-2548 |
| Lucas C. Buzzard | www.jk-llp.com |
| Michael DiGiulio | |
| Leah M. Seliger | |

November 27, 2024

**VIA ECF**

Honorable Jessica G. L. Clarke
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

                Re:    *Ortega v. Trident Restoration Inc., et al., N*o.: **23-cv-1927 (JGLC)**

Dear Judge Clarke,

      We represent Named Plaintiffs Angel Ortega and Jorge Navarro, as well as seventeen other plaintiffs who have opted-in to this lawsuit by executing consents to sue under the Fair Labor Standards Act ("FLSA"). The parties have reached a settlement that resolves all claims in this action, and their executed settlement agreement is annexed hereto as Exhibit 1. We respectfully request that the Court approve the settlement as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

    **I.**    **Background And Procedural History**

      Plaintiffs commenced this wage and hour action as a putative class and collective action on March 6, 2023. ECF Dkt No. 1. The Complaint alleges claims under the FLSA and the New York Labor Law ("NYLL") against Defendants Trident Restoration, Inc., Tri Contracting, Inc., eighteen affiliated entities, and three individual defendants. As amended, Plaintiffs' complaint alleges that Defendants violated the FLSA and NYLL by (1) failing to pay the statutory minimum wage in violation of the FLSA; (2) failing to Class Members all earned overtime wages in violation of the FLSA and NYLL; (3) failing to pay Class Members for all hours worked and/or taking deductions from earned wages in violation of the NYLL; and (4) failing to provide the wage notices and wage statements required under N.Y. Lab. L. § 195. *See* ECF Dkt No. 91 (Am. Compl.).

      The parties engaged in substantial discovery and motions practice. At the outset of the case, the Court granted Plaintiffs' request for pre-certification class-wide discovery of wage and hour records. ECF Dkt No. 56. The parties engaged in two rounds of discovery motions practice, *see* ECF Dkt Nos. 65, 71, Defendants responded to interrogatories and produced, *inter alia*, class-wide payroll and time records. Plaintiffs deposed: (1) the three individual defendants; (2) corporate representatives for 12 of the entity Defendants; and (3) two non-parties who worked for Defendants as accountants. Defendants deposed the two Named Plaintiffs and one opt-in Plaintiff.

In August 2024, Plaintiffs successfully moved to amend their Complaint to add a claim of failure to pay for all hours worked in violation of N.Y. Lab. Law §§ 191, 193, and 198. *See* ECF Nos. 84, 90. In September 2024, Plaintiffs moved for class certification as to their NYLL claims. ECF Nos. 92-96. After Plaintiffs moved for class certification, the parties engaged in extensive settlement discussions to resolve this action. In connection with such discussions, Plaintiffs conducted an extensive analysis of Defendants' daily clock-in and clock-out records for several sample Plaintiffs over the course of three years and then used those samples to estimate the unpaid regular and overtime wages for all the opt-in Plaintiffs throughout the liability period based on the length of time each worked for Defendants. Using Plaintiffs' damages calculations as a springboard for negotiations, the parties ultimately agreed in October 2024 to settle the case for a total of $525,000.

## II.     The Settlement Terms

As set forth in the Settlement Agreement, the parties have agreed to settle the case for $525,000 (the "Settlement Sum"). *See* Ex. 1 ¶ 2.a. This will be paid in eight equal monthly installments starting 7 days after Court approval of the settlement. *Id.* ¶ 2.b. To guarantee the payment of the eight installment payments, Defendants have executed a consent judgment authorizing entry of judgment against them in the amount of $650,000 (less the amount of any installments already made) if the Defendants miss an installment payment and fail to cure within ten days of being notified of the late payment. *Id.* ¶ 3 & Ex. C.

The Settlement Agreement provides for a $15,000 Service Award to be divided equally among the two Named Plaintiffs. *Id.* ¶ 2.a.i.(2). This payment is in return for services provided to the Opt-In Plaintiffs. It also provides for payment of $174,600.00 to Plaintiffs' counsel for attorneys' fees ($165,678.85) and costs ($8,920.15). The remainder of the Settlement Sum ($335,400.00) will be distributed to the Named Plaintiffs and Opt-In Plaintiffs as allocated in a table set forth as Exhibit B to the Settlement Agreement. As discussed below, the individual settlement amounts allocated to the Named and Opt-In Plaintiffs are based on the length of time they worked for Defendants, their estimated unpaid hours, and the penalties available on their N.Y. Lab. Law § 195 wage notice and wage statement claims.

In consideration for payment of the Settlement Sum, all Plaintiffs have agreed to release all Defendants from all federal and state wage-and-hour causes of action arising out of their employment with any of the Defendants that accrued at any time during the 6-year liability period of this case (i.e., from March 6, 2017 to the effective date of the agreement). Ex. 1 ¶ 4.

## III.    The Settlement Should Be Approved

Under *Cheeks*, a court must determine whether an FLSA settlement is fair and reasonable. Relevant factors include:

> (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faces by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted). Applying these factors, the settlement is fair and reasonable.

The total settlement amount of $525,000 is fair and reasonable in light of Plaintiffs' range of possible recovery. Nineteen Plaintiffs will receive payments in connection with the settlement agreement: (1) the two Named Plaintiffs; (2) twelve Opt-In Plaintiffs who filed consent to sue forms; and (3) five Opt-In Plaintiffs who executed consent to sue forms prior to the parties' reaching a settlement but who have not yet filed those forms. Based on Plaintiffs' calculations, the maximum potential compensatory damages for unpaid regular and overtime hours for the nineteen plaintiffs is approximately $143,515.00. This number was derived by performing an analysis of two years' worth of weekly clock-in, clock-out records for five sample Plaintiffs out of the group of nineteen. Through this analysis, Plaintiffs' counsel determined that there were numerous weeks each year when the sample plaintiffs were not paid for the full number of regular and overtime hours that their time records showed they worked. Plaintiffs' counsel then derived the annual unpaid wages for the sample plaintiffs for the two sample years and used the average of all sample plaintiffs' annual unpaid wages to derive the estimated unpaid wages for each of the remaining nineteen plaintiffs, as determined by the length of their employment with Defendants.

In addition to the above unpaid wages, Plaintiffs' potential damages for violations of N.Y. Lab. L § 195(1) total $95,000, and their potential damages for violations of N.Y. Lab. L. § 195(3) total $95,000. Finally, the two Named Plaintiffs each allege that Defendants did not pay them at all for 7 weeks of work, for a total amount of $15,000. In addition, if Defendants were unable to establish the good faith defense to liquidated damages, Plaintiffs could recover liquidated damages equal to the amount of their unpaid wages. Thus, the maximum possible recovery for all nineteen Plaintiffs is approximately $507,000 ($158,500 in unpaid wages, $158,500 in liquidated damages, $95,000 in NYLL 195(1) penalties, and $95,000 in NYLL 195(3) penalties). The $525,000 Settlement Sum therefore exceeds the Plaintiffs' maximum possible recovery. Moreover, after the deduction of attorneys' fees, costs, and the service awards to the Named Plaintiffs, the net amount distributed to the Plaintiffs ($335,400.00) constitutes 96% of their total compensatory unpaid wage damages and NYLL 195 penalties ($348,500.00).[1] The settlement amount is therefore reasonable. *See, e.g.*, *Khan v. Dunwoodie Gas Station, Inc.*, No. 19-cv-5581, 2020 U.S. Dist. LEXIS 42179, at *6 (S.D.N.Y. Mar. 10, 2020) (collecting cases "confirm[ing] that securing two-thirds of a potential total recovery is generally deemed fair, reasonable, and adequate").

This settlement will allow the parties to avoid the anticipated burdens and expenses in establishing their claims and defenses. Absent a settlement, all parties would incur substantial additional expenses, including possible summary judgment motions practice and trial.

Plaintiffs also face serious litigation risks. Over half of Plaintiffs' possible recovery ($190,000) consists of penalties on their N.Y. Lab. Law § 195(1) and (3) wage notice and statement claims. As numerous decisions from courts in this Circuit show, such claims are subject to attack for lack of standing based on the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), at all stages of the litigation. *See, e.g.*, *Acton v. Powerline Cycles, Inc.*, 2024 U.S. Dist. LEXIS 183252, at *6-9 (S.D.N.Y. Oct. 3, 2024) (dismissing NYLL § 195(1) and (3) claims

---

[1] The amounts to be received by the individual Plaintiffs are set forth in a table at Exhibit B to the Agreement.

for lack of standing following trial). Thus, if Plaintiffs could not establish that they suffered a "concrete harm" flowing from the lack of proper wage notices/wage statements, then they face the constant risk of having these claims dismissed prior to or even after trial.

This settlement, which was reached after extensive discovery and approximately one month of negotiations, is clearly the result of arm's-length bargaining between experienced counsel, and there has been no fraud or collusion. The settlement is also fair and reasonable in light of the purposes of the FLSA. The settlement is not confidential, the Opt-In Plaintiffs' release is limited to their FLSA and NYLL claims, and there are no non-disparagement provisions. *See*, *e.g.*, *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727, 2016 U.S. Dist. LEXIS 5366 (S.D.N.Y. Jan. 5, 2016).

### IV.     The Named Plaintiffs' Service Awards Should Be Approved

The Settlement Agreement provides that each Named Plaintiff will receive a $7,500 Service Award payment out of the Settlement Sum. These payments will compensate the Named Plaintiffs for their services to the Opt-In Plaintiffs. Service awards are routinely granted to lead plaintiffs in collective and class actions. Such awards "serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Mikityuk v. Cision US Inc.*, 2022 U.S. Dist. LEXIS 135405, at *18-19 (S.D.N.Y. July 29,2022) (internal quotation marks omitted). Here, the Named Plaintiffs initiated and litigated the action, sat for a deposition each, and submitted declarations in support of Plaintiffs' motion for class certification thus ultimately enabling the creation of a settlement fund to compensate all of the Opt-In Plaintiffs. Accordingly, their Service Awards of $7,5000 each are reasonable and should be approved. *See id.* at *21-23 (collecting cases awarding service awards of $10,000 to $15,000 to named plaintiffs).

### V.     Counsel's Fees and Costs Should Be Approved

The Settlement Agreement provides that Plaintiffs' counsel will receive a total amount of $174,600.00, which consists of $8,920.15 in costs[2] and $165,679.85 in fees. *See* Ex. 1 ¶ 2.a.ii. Under Plaintiffs' contingency fee engagement agreement, Plaintiffs' counsel is entitled to request reimbursement of costs and one-third of the after-costs settlement as fees. This amounts to approximately $171,854. Thus, counsel's requested fee is less than one-third of the overall settlement and should be approved. *See Mireku v. Red Vision Sys., Inc.*, No. 11 Civ. 9671, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (noting the consensual nature of the fee arrangement); *see also Martinez v. Consulate Gen. of Algeria in N.Y.*, No. 16 Civ. 2390, 2016 U.S. Dist. LEXIS 157999, at *8-9 (S.D.N.Y. Nov. 15, 2016) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit."); *Rangel v. 639 Grand St. Meat & Produce Corp.,* No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit.").

The requested fee is also reasonable under a lodestar crosscheck.  Four attorneys worked on this case: the undersigned (168.7 hours), D. Maimon Kirschenbaum (13.90 hours), Denise Schulman (10.6 hours), and Josef Nussbaum (26.3 hours). In addition, two paralegals and an

---

[2] Counsel seeks reimbursement of these costs: $402 filing fee, $2,810.90 for service of process on the 20 entity defendants and three individual defendants, $5,522.00 in deposition expenses, and $185.25 in translation expenses.

administrative assistant performed work on this case.[3] The firm's contemporaneous time records for this case are attached hereto as Exhibit 2.

Mr. Kirschenbaum graduated from Fordham University School of Law in 2005 and has worked at Joseph & Kirschenbaum LLP ("JK") since then. JK is a law firm dealing almost exclusively with employee rights. Specifically, the firm represents employees in wage/hour and employment discrimination matters. As a result of his accomplishments, he became a member/partner of the firm in May 2007, and he currently manages the firm. Ms. Schulman received her J.D. from NYU School of Law, *cum laude*, in 2008 and joined JK in January 2009. She was an associate at JK until February 2017, when she became a partner. Mr. Nussbaum graduated from McGill University's Faculty of Law in 2009 and joined JK in 2011. In January 2020, he was named partner of the firm. I graduated *magna cum laude*, from American University, Washington College of Law in 2010. I joined JK in September 2015. In the interim, I worked as a law clerk in the Staff Attorney's Office of the United States Court of Appeals for the Second Circuit and then as a law clerk to the Hon. Peter W. Hall of the United States Court of Appeals for the Second Circuit. I am currently a senior associate at JK. The overwhelming majority of all above attorneys' practice has been representing employees with employment-related claims, including wage-and-hour class actions. Courts have repeatedly recognized JK's skill and expertise in wage and hour litigation. *E.g.*, *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 CV 5008, at 20:1-3 (S.D.N.Y. Dec. 22, 2015) (stating, "I think Mr. Kirschenbaum and Ms. Schulman and their firm are the best in breed – of firms doing this kind of work") (transcript attached as Ex. 3).

Judge Woods recently approved an hourly rate of $500 for Mr. Kirschenbaum, Mr. Nussbaum, and Ms. Schulman, as well as a $400 hourly rate for me and a $125 hourly rate for JK's paralegals. *Zivkovic v. Laura Christy LLC*, Case No. 17 Civ. 553 (S.D.N.Y. June 15, 2022) at 18:11-24 (transcript attached as Ex. 4); *see also Brown v. Barnes & Noble, Inc.*, No. 16 CV 7333, 2020 U.S. Dist. LEXIS 85442, at *9-10 (S.D.N.Y. May 14, 2020) (approving a $500 rate for a partner with almost 10 years of experience litigating FLSA cases).

Using the above hourly rates yields a lodestar of $112,667.50. The requested fee thus constitutes a lodestar multiplier of 1.47 and is therefore objectively reasonable. *E.g.*, *Campos v. Goods*, No. 10 CV 224, 2011 U.S. Dist. LEXIS 22959, at *21 (S.D.N.Y. Mar. 4, 2011) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar."); *see also Quiroz v. NYC Bldg. Mgmt. LLC*, No. 16 CV 7077, 2017 U.S. Dist. LEXIS 141162, at *7 (S.D.N.Y. Aug. 30, 2017) (approving one-third fee that amounted to a 2.46 lodestar multiplier). For the foregoing reasons, the requested attorneys' fees and costs are reasonable.

As set forth above, we respectfully request that the Court approve the parties' settlement as fair and reasonable. We thank the Court for its attention to this matter.

---

[3] The paralegals/administrative assistant who worked on this case are Mariela Lini (57.7 hours), Andy Pichardo (68.2 hours), and Evelyn Velasca (32.40 hours). Ms. Velesaca joined JK as an administrative assistant in February 2022 and became a paralegal at the firm in January 2023. She received her B.A. from Hunter College in 2022. Before joining JK, Ms. Velesaca interned at Kramer Levin Naftalis & Frankel, the New York City Department of Social Services, and Volunteers of Legal Service. Ms. Lini has been a paralegal at JK since January 2024. She received her B.A. from John Jay College of Criminal Justice in 2019. Before joining JK, she had nearly five years of experience as a legal assistant/paralegal. Andy Pichardo has been an administrative assistant at JK since December 2023. He received his BA from The City College of New York in June 2023.

Respectfully submitted,

_/s/Lucas C. Buzzard_
Lucas C. Buzzard